FRANK RAWLINGS v. YOUNG MEN'S CHRISTIAN
ASSOCIATION OF LINCOLN.

FILED APRIL 21, 1896.   No. 6506.

1. **Contracts: PLEADING: BURDEN OF PROOF.** When suit is brought upon a contract, a general denial puts the making of the contract in issue, and the burden devolves upon the plaintiff of establishing it substantially as alleged.

2. **Subscriptions: PLEADING: EVIDENCE: PRINCIPAL AND AGENT: INSTRUCTIONS.** Suit was brought on a subscription contract, alleging an absolute subscription. The answer contained a general denial. The evidence tended to show that the defendant had authorized the plaintiff's solicitor to enter his name for a certain amount subject to certain conditions; and that the solicitor had subscribed defendant's name without embodying such conditions in the contract. *Held,* (a) That the issue presented was not whether there had been a breach of the conditions which would constitute a defense, but was whether the defendant had authorized the contract which the solicitor had undertaken to make for him; (b) that the defendant was not bound by the acts of plaintiff's solicitor beyond the actual authority conferred upon him; (c) that the defendant was entitled to have this theory of the case submitted to the jury.

3. **Evidence: LOST BOOKS: SUBSCRIPTION.** The book in which the subscription was entered was proved to have been lost. *Held,* That the plaintiff might prove its contents by parol evidence, although there were in existence similar books also used for subscription purposes, substantially like the one in question, and not offered in evidence.

ERROR from the district court of Lancaster county. Tried below before HALL, J.

*Davis & Hibner,* for plaintiff in error.

*Ricketts & Wilson, contra.*

IRVINE, C.

The Young Men's Christian Association of Lincoln brought this suit against Rawlings, alleging in its petition that it was a corporation, and that in the year 1888,

desiring to erect a building, it solicited subscriptions for that purpose; that Rawlings subscribed to the erection of the said building the sum of $500, to be paid on demand; and that the association, on the faith of that and other like subscriptions, proceeded to erect a building for the use of the association and contracted extensive liabilities which remain unpaid; that thereby Rawlings became indebted to the association in said sum of $500. Rawlings answered admitting that the plaintiff was a corporation and that in 1888, desiring to erect a building, it solicited subscriptions for that purpose. Further answering, Rawlings denied that he subscribed $500, or any sum whatever, for said purpose; denied that he was indebted to the association in the sum of $500, or in any sum whatever; and denied every allegation of the petition not specifically admitted. The trial resulted in a verdict and judgment for the association for the amount claimed, with interest. Rawlings brings the case here by petition in error.

The evidence discloses that one Ensign had been employed by the association to solicit subscriptions; that for this purpose there was placed in his hands a book containing a certain preliminary statement or caption in the nature of a subscription contract. This was followed by blank spaces for signatures and the entry of the amounts subscribed. There were several of these books, which were turned in by the solicitors to the officers of the association. In one of the books, turned in by Ensign, appeared the name of Rawlings, and opposite it, in figures, "$500." This book was not forthcoming on the trial, and after quite satisfactory proof that diligent search for it had proved unavailing, the plaintiff was permitted to prove its contents by parol evidence. None of the witnesses undertook to give the language of the so-called "caption." None of the other books was produced or offered in evidence. There was evidence tending to show that some of these captions were printed, some written, and some type-written; that they were not in all

respects alike, although substantially the same in terms. The parol evidence admitted tended to show that following Rawlings' name appeared the words, "to be used on building." Mr. Ensign testified that when he called on Rawlings, Rawlings authorized him to enter his name for $500 on this condition, and on the further condition that the building should cost $50,000. Mr. Rawlings' testimony was to the effect that he had positively refused to himself subscribe or to permit his name to be subscribed for any sum whatever; but that he had said that if he gave anything it would be on condition that the building should be commenced the following spring and completed during the year. Witnesses on behalf of the association testified to conversations with Rawlings after the time of his alleged subscription. One of these witnesses says that, when confronted with the book, Rawlings said that there was a condition to the subscription, that the association was to begin the building within a given time. Another witness said that Rawlings' statement to him was that the subscription was to be applied upon the building and not on the lots, and that the building was to be completed at once. The remaining witness for the plaintiff, testifying as to this last conversation, said that Rawlings said that the building was to be completed within a year. Reviewing this testimony, it will be observed that it is conceded that Rawlings did not himself subscribe; that according to his own testimony he never subscribed, but merely said that if he did it would be upon certain conditions. According to the other witnesses, he had authorized Ensign to subscribe for him, but according to each of them there was a condition to be attached to his subscription, although the witnesses differ as to what this condition was. In this state of the evidence, the court instructed the jury as follows:

"Plaintiff contends in its evidence that defendant authorized the witness Ensign to sign his name to its subscription list for $500, in the year 1888, to be used in the erection of its building. Whether or not such authority

was given is a question for you to determine from the evidence.

"If you find from the evidence that defendant, in the year 1888, authorized the witness Ensign to sign defendant's name to plaintiff's subscription list for $500, to be used by plaintiff in the erection of its building, then you are instructed that defendant's name, if so signed by his direction and authority, binds defendant, and is as legal as though signed by himself personally."

The following instructions requested by defendant were refused:

"If you find from the evidence that the defendant refused to sign the subscription contract described in the petition and testimony of plaintiff, but instead thereof authorized his name to be attached to another and different contract, then your verdict should be for the defendant.

"You are instructed that if you find that the defendant authorized the witness Ensign to sign his name to a subscription with certain conditions annexed, and the witness Ensign signed his name to such subscription without those conditions annexed, such act of signing would not be the act of the defendant and he would not be bound thereby.

"If you find from the evidence that the defendant authorized his name to be signed to a subscription for $500 upon condition that plaintiff would agree to complete its building within one year, then such condition was necessary and without it the defendant could not be bound, and if you find from the evidence that such condition was required by him at the time, your verdict should be for defendant."

The propriety of the giving and refusal of these instructions is presented for review.

The plaintiff contends that under the pleadings there was no question presented as to a condition attached to the subscription, or a breach thereof; that, therefore, the court properly submitted the case to the jury on the sole

question of the authority given by Rawlings generally to
subscribe his name; and therefore properly refused in-
structions involving a consideration of the conditions at-
tached to the subscription. We quite agree with the
plaintiff that the special denial of a subscription put in
issue only the question as to whether there had been any
subscription, of whatever character. But the answer
contained a general denial, and it therefore devolved
upon the plaintiff to prove the contract as he alleged it.
(*McEvoy v. Swayze*, 34 Neb., 315.) In that case the plaintiff
sued on a contract which he set forth. The defendant by
answer averred a different contract and denied the con-
tract pleaded by plaintiff by a general denial of the peti-
tion. The court held that the burden devolved upon the
plaintiff of establishing the contract he alleged, saying:
"The answer, therefore, put in issue the making of the
contract and the breach thereof as set up in the petition.
The affirmative matter averred in the answer is nothing
more than an argumentative denial. Such allegations
were entirely unnecessary, as the facts could have been
proven under the general denial." If the defendant in
this case had pleaded specially, the answer would neces-
sarily have been reducible to this form: "The defendant
says that he did make a certain contract of subscription,
as follows: etc. But denies that he made the contract
alleged in the petition." To any one familiar with com-
mon law pleading, it is at once apparent that this would
have been analogous to the special traverse of the com-
mon law, where the inducement was not itself traversable
and the *absque hoc* was the gist of the plea. (Tyler, Ste-
phen on Pleading, 199.) It would not be a plea in confes-
sion and avoidance, but a direct traverse putting in issue
the declaration, with the affirmative matter merely
pleaded as an inducement, but not itself tendering an
issue. If the defendant were here relying upon a condi-
tional subscription and a breach thereof, it might be
questionable, under the Code, whether the common law
rule would prevail, and whether it would not be necessary

for the defendant to plead the condition and the breach; and in such a case the plaintiff's further argument might be pertinent, that the conditions here proved were conditions subsequent and not precedent; and that, therefore, the subscription was collectible without proof of a prior compliance with the condition. But the question presented by the instructions is a different one. Rawlings did not himself subscribe. The utmost that the plaintiff's evidence discloses is a subscription for him by an agent. This agent was also the agent of the association, so that the association was charged with the agent's knowledge of any limitations placed upon his authority by the defendant. Therefore there is no question in the case of an implied authority, or authority by estoppel. If it is true that Rawlings did authorize Ensign to subscribe $500 for him, but required that certain conditions should be attached to this subscription, then the subscription by Ensign of Rawlings' name to a contract not embodying those conditions was without authority. It was not the act of Rawlings, and he is not bound thereby. The instructions given by the court may be in themselves correct; but under the evidence they should have been accompanied by specific instructions bearing on this question of the authority given to Ensign; and while perhaps those requested by the defendant were not so specific as might be desired, the first and second at least were free from legal objections, and the defendant was entitled to have them given.

The defendant contends that the court erred in admitting parol evidence of the contents of the subscription book, in view of the fact that the evidence disclosed that other books of like character were in existence. It is insisted that these other books were better evidence than parol testimony of the contents of the particular book, as to the nature of the contract, at least so far as the caption is concerned. This question should be disposed of, as there must be a new trial of the case. We do not think that in this respect the court erred. In the first place, it

was not shown that the other books in existence were copies of that particularly in question. The proof was merely that they were in substance alike, and that they differed in details. In the second place, we think it is the general rule that there are no degrees of secondary evidence. When the primary is not obtainable, a party may resort to any evidence otherwise competent; and his choice of one class of secondary evidence instead of another goes to the weight of the evidence and not to its admissibility. (*Goodrich v. Weston*, 102 Mass., 362; Greenleaf, Evidence [14th ed.], sec. 84, note.)

REVERSED AND REMANDED.